ORIGINAL

FILED

## THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

JUN  8 2015

**U.S. COURT OF
FEDERAL CLAIMS**

|  |  |
|---|---|
| DMYLES, Inc. | ) |
| Plaintiff, | ) |
|  | ) |
|  | ) |
| v. | ) |
|  | ) |
| UNITED STATES | ) |
|  | ) |
| Defendant | ) |
|  | ) |

**15 - 573 C**

Civil Action No. _____

## COMPLAINT

This is a bid protest in which Plaintiff, DMYLES, Inc., ("DMYLES") hereby complains of the procurement practices of the United States, by and through the Department of Veteran Affairs ("VA"), Office of Small and Disadvantaged Business Utilization ("OSDBU).

1.    On April 20, 2015, the OSDBU improperly upheld a decision issued by the Department of Veteran Affairs, Center for Verification and Evaluation, dated March 26, 2015 which held that DMYLES does not meet the status requirements of a SDVOSB concern as established by 38 C.F.R. Part 74, and is therefore ineligible for award a contract under Solicitation No. VA-528-15-B-0055, despite being the low bidder.

2.    DMYLES seeks a declaration that (a) the OSDBU acted contrary to law and regulation in making its determination that DMYLES is not a valid SDVOSB, (b) that DYMYLES is a valid SDVOSB under pertinent law and regulation and is therefore eligible for pending and future SDVOSB contract awards, and (c) DMYLES is eligible for an award under Solicitation No. VA-528-15-B-0055.

## Parties

3.      Plaintiff, DMYLES, is a New York Corporation with its principal offices located in Niagara, NY.

4.      Defendant is the United States of America, acting through the VA OSDBU.

### Jurisdiction

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1491(b)(1).

### Facts

#### *Background*

6.      Darius Myles is a Veteran of the United States Air Force/Army, having served between 2004 and 2009, and served two tours of duty in Iraq.  During these tours of duty he held a number of positions which afforded extensive managerial, logistical, and supervisory experience.

7.      Mr. Myles was honorably discharged in May 2009 as a 90% Disabled Combat Veteran.

8.      Prior to entering the service, Mr. Myles worked in the family-owned construction business.  His experience with the family-owned company included working as a laborer and helping with scheduling, work coordination, billing, invoicing, ordering and payment on a number of large contracts.

9.      After his discharge from the service, Mr. Myles was employed in a number of jobs which expanded his existing managerial, logistical, and supervisory experience.

10.      In July, 2013, Darius Myles founded DMYLES, Inc.  Mr. Myles applied for and received SDVOSB status with the SBA in 2013.  DMYLES is also listed as a certified SDVOSB with New York State.

#### *VA Solicitation and Status Protest*

11.    On or about December 15, 2014 the Department of Veterans Affairs – Western New York Health Care System issued Solicitation No. VA528-15-B-0055 requesting quotes to remove and replace approximately 500 linear feet of 8" steam carrier piping, 3" condensate carrier piping and , as well as the 26" diameter conduit piping and legacy concrete vault, at the VA Medical Center in Canandaigua, New York.

12.    DMYLES submitted its bid in a timely manner, and subsequently the VA determined that it was low bidder, by letter dated February 18, 2015.

13.    On February 19, 2015, US Innovative Construction, LLC filed a protest regarding DMYLES's SDVOSB status, alleging the following:

a.    DMYLES is an alter ego of Strock Enterprises, as evidenced by a number of alleged connections between it and DMYLES which constitutes a controlled relationship between a SDVOSB and a non-SDVOSB.  As a result it is alleged that DMYLES does not meet the eligibility requirements of a SDVOSB;

b.    DMYLES does not possess the management experience of the extent to run the company or complete a project of this complexity.

14.    DMYLES responded to the protest, as follows:

a.    Extensive factual and legal support was provided proving unequivocally proving that DMYLES met all the regulatory requirements relating to its direct and unconditional ownership and control of the business;

b.    In regard to the allegation that Darius Myles does not possess the requisite managerial experience to run the business, the following evidence was provided:

- Darius Myles had extensive educational credentials relating to training in business management, including an Associate Degree in Business Administration, and almost-completed Bachelor Degree in Integrative Business Management and participation in numerous programs and seminars relating business management and minority business readiness programs and his mentoring-type relationship with Strock Contracting which had extensive experience in construction industries.

- Mr. Myles' resume provided evidence of his managerial and/or construction experience including: 1550 hours as a general construction laborer; his employment as Logistical Coordinator for Kellogg Brown & Root and his extensive supervisory experience while serving in the military.

15.   On March 26, 2015, the VA Center for Verification and Evaluation issued its protest decision stating the following:

a.   Mr. Myles has a valid service-disabled Veteran status, as evidenced by the submission of the pertinent VA records;

b.   Mr. Myles assertions regarding his relationship with non-veteran entities were accepted and the protest failed to submit evidence which demonstrated that a dependent business relationship existed;

c.   However, Mr. Myles does not control the participant as required by 38 CFR § 74.4(b), which requires that the service-disabled veteran must possess the managerial experience of the extent and complexity required to manage the

4

business.   Mr. Myles' resume and responses to the status protest do not
demonstrate the managerial experience needed to run a construction company.

d.   Based upon the totality of the circumstances and evidence presented it is
determined that DMYLEA does not meet the status requirements of a
SDVOSV concern and that it should not be permitted to submit another offer
as a SDVOSB or VOSB, unless it applies for and receives a verified SDVOSB
status.

16.     On April 1, 2015, DMYLES timely filed an appeal of this decision to the
OSDBU, alleging the following:

a.   The decision made a number of factual errors regarding Mr. Myles' education
and employment history.

b.   The decision also referenced that his position at Kellogg Brown & Root lasted
less than a year.   However, the supervisory and management work he
performed for this company was exactly the same as he performed while in
the Air Force.   Combined there was four years of supervisory and
management experience handling multi-million dollar inventories and
equipment and supervision of numerous personnel.   This experience far
exceeds the personal management and financial management required for a
small general construction company;

c.   A degree in Integrative Business Management should constitute sufficient
experience;

d.  Mr. Myles has completed the MWBE and Small Business Contractor Bond Readiness Program which is for small business owners specifically in the construction business (reference letters were attached);

e.  The mere ability to obtain bonding for a $635,000 federal project can be considered proof that Mr. Myles possesses the necessary managerial expertise to control the company;

f.  According to 38 CFR § 74.4(b), a service-disabled veteran must possess the managerial experience to the extent and complexity required to manage the applicant. Applicant DMYLES is a small construction company. It is not a large company that does millions of dollars of work annually. Construction is done one job at a time. The contract in question is only a $653,000 job. The expertise and experience required is very minimal. The nature of the work is digging a trench and replacing the pre-existing steam line, and will take approximately 12 weeks to complete and will require management of only 6 workers at its peak. Mr. Myles has had experience handling far more than 6 workers. The job would require all things previously experienced, but on a much smaller scale.

17.  On April 20, 2015 the OSDBU affirmed the previous decision. In its decision the OSDBU stating that despite the educational and previous job experience, including general management experience, "DMYLES has not demonstrated that its Veteran owner has any general construction management experience or how the experience and education that he received prepared him to manage a general construction company." In support for its conclusion, the OSDBU cited 38 C.F.R. § 74.4(b).

## Count One

### Declaratory Judgment

18.     DMYLES incorporates ¶¶ 1-17 above.

19.     The OSDBU's decision was improper and unreasonable because it acted contrary to law and regulation when it determined that DMYLES was not a valid SDVOSB and that it was ineligible for a contract under Solicitation No. VA-528-15-B-0055 and all other future contracts awarded as an SDVOSB.

20.     Pursuant to Public Law 106-50 (113 STAT. 234) (August 17, 1999) it is acknowledged that the "United States has done little to assist veterans, particularly service-disabled veterans, in playing a greater role in the economy of the United States by forming and expanding small business enterprises in the United States." (SEC. 101.(3)). "The United States must provide additional assistance and support to veterans to better equip them to form and expand small business enterprises, thereby enabling them to realize the American dream that they fought to protect. (SEC. 101.(5)) "The purpose of this Act is to expand existing and establish new assistance programs for veterans who own or operate small businesses." (SEC. 102.)

21.     The pertinent part of 38 C.F.R. § 74.4(b) states:

> Individuals managing the concern must have managerial experience of the extent and complexity needed to run the concern. A veteran need not have the technical expertise or possess a required license to be found to control an applicant or participant if he or she has the ultimate managerial and supervisory control over those who possess the required licenses or technical expertise.

22.     DMYLES alleges that the OSDBU's decision being appealed herein failed to consider the stated goal and purpose of the SDVOSB program by making the determination that Mr. Myles' lack of managerial experience in a construction company precludes him from

receiving his SDVOSB status. Plaintiff alleges that such a decision was arbitrary and capricious and was not supported by the facts presented and constitutes a misinterpretation of the above cited regulation.

23.    It must be noted that nowhere in 38 C.F.R. § 74.4(b) does it require that the management experience required must be in the field of the business being certified. The regulation merely states that individuals managing the concern must have managerial experience of the extent and complexity needed to run the concern. The regulation further provides that veterans need not have the technical expertise or required license as along as the veteran has the ultimate managerial and supervisory control over those who have such expertise or license.

24.    DMYLES alleges that Mr. Myles has presented incontrovertible evidence that he has the managerial experience of the extent and complexity need to run his company, thereby mandating that its SDVOSB status be reinstated and a determination that he is eligible to receive awards for SDVOSB contracts.

25.    Mr. Myles is service disabled veteran, who served two tours of duty in combat areas in Iraq. During these tours of duty Mr. Myles supervised the maintenance and operation of over $15 million worth of aircraft vehicles, led training of personnel on over 60 air freight movements and provided leadership, instruction and discipline to Airmen in daily operations relating to freight systems and vehicle handling and servicing. Therefore, Mr. Myles has provided evidence of strong managerial, organizational, logistical, personnel and equipment managerial skills garnered under far more complex and stressful conditions than is required in managing a small construction company.

26.    During his employment at Wegmans, Mr. Myles was responsible for schedule coordination for 83 employees and was "front end" manager who worked with upper

management to significantly increased store-wide efficiency. Therefore, Mr. Myles has provided evidence of strong logistical, personnel and overall management skills.

27.     During his employment with Kellogg, Brown & Root, Mr. Myles supervised a team of 8 personnel in day to day operations and contingency plans in a hazardous combat zone. Further, Mr. Myles operated numerous pieces of heavy machinery. Therefore, Mr. Myles has provided evidence of strong managerial, organizational, logistical and personnel skills that were exhibited under the added stress of working under hazardous conditions. Further, Mr. Myles has also provided evidence of actual and operational skills regarding the use of heavy machinery.

28.     During his employment as an equipment operator with Northeast Diversification Inc., Mr. Myles operated heavy equipment and performed general labor duties relating to a multimillion dollar school reconstruction project. Therefore, Mr. Myles has provided evidence of his increasing knowledge and experience relating to heavy construction machinery and construction as a whole.

29.     During his employment as a general construction laborer with Mader Construction Company, Mr. Myles performed various tasks relating to demolition, remodeling, construction and structural repair. Therefore, Mr. Myles has provided evidence of his increasing knowledge and experience with numerous aspects of the construction industry.

30.     As a result of being the CEO of DMYLES, Inc., Mr. Myles has significantly increased his managerial experience and knowledge regarding the aspects of incorporating a construction company, and overseeing and performing the day to day operations. Further, Mr. Myles has significantly increased his experience in reviewing construction drawings and specifications and determining the schedule, manpower, subcontractors and cost necessary to bid on various government and commercial contracts.

31.    In order to expand his knowledge of the construction industry and to further develop his management skills, beyond what was delineated above, Mr. Myles has afforded himself of numerous educational outlets, including pursuing an Associate's degree in Business Administration and a Bachelor's degree in Integrative Business Management.    Further, Mr. Myles, over the past four years has worked with the NYS Small Business Development Center and the SBA and has participated in numerous other entrepreneurial conferences.    Additionally, Mr. Myles is presently participating in the SBA Mentoring program.    Therefore, it is strongly evidenced that Mr. Myles has been extraordinarily proactive in pursuing every avenue available to gain management knowledge and experience.

32.    As detailed above, Mr. Myles has extensive management, logistic and personnel experience.    The majority of this experience occurred when he was in the military under hazardous conditions.    The complexity of his work far exceeded the complexity of running a small construction company.    Mr. Myles has exhibited exemplary management skills under the most difficult of circumstances. Further, he has exhibited strong organizational skills.    Mr. Myles has also taken the added step of pursuing every educational opportunity in order to fine tune the management and organizational skills he previously obtained.    Finally, Mr. Myles has considerable experience in the construction business as a result of working for the family-owned construction company and working as a laborer, which gave him an insight as to workings of a construction company.

33.    Plaintiff alleges that these skills and experience must be viewed as a whole in order to determine his capability to run a small construction company.    Failure to do this essentially eliminates any chance for a young, service disabled veteran from receiving the SDVOSB certification, renders his military service and work experience inconsequential and is

in violation of the cited regulation and is in violation of the spirit of the SDVOSB program as established by Public Law 106-50 (113 STAT. 234).

34.     Furthermore, it must again be stressed that the subject contract is small in scope and uncomplicated in nature. The work entailed the removal and replacement of approximately 500 linear feet of 8" steam carrier piping, 3" condensate carrier piping and, as well as the 26" diameter conduit piping and 4 legacy concrete vaults. Essentially, no design effort is required. The work required would amount to excavation, installing temporary and permanent piping, weld and x-ray the piping, casting the installing the concrete vaults, and restoring the site, all of which would only take approximately 12 weeks. There is no major engineering or highly technical work, with the exception of the x-raying the piping, which would be handled by a subcontractor. The job would require no more than 6 workers on the site at any time. DMYLES and Mr. Myles would be in charge of all Project Management, quality assurance, submittals, scheduling, contracting, overseeing, inspecting the work of and payment of subcontractors and general business activities. Further, DMYLES's employees, including Mr. Myles would provide a majority of the actual labor required for the job. Whatever work that would be performed by subcontractors, would be under the strict managerial and supervisory control of Mr. Myles.

35.     Based upon the foregoing, DMYLES alleges Mr. Myles's extensive managerial, logistical, personnel, scheduling and actual labor experience clearly proves evidence of his capability to manage a small construction company pursuant to the requirements of 38 C.F.R. § 74.4(b).

WHEREFORE, Plaintiff DMYLES respectfully requests that the Court enter an order providing the following relief:

11

(a) Declare that the VA acted unreasonably and contrary to law and regulations when it determined that DMYLES is not a valid SDVOSB;

(b) Determine that DMYLES is a valid SDVOSB and is therefore eligible for future and pending SDVOSB contract awards including any awards issued pursuant to Solicitation No. VA528-15-B-0055;

(c) Award DMYLES its attorneys' fees and expenses;,

(d) Award DMYLES such other and further relief as is equitable and just.

Dated: June 5, 2015

Respectfully submitted,

DMYLES, Inc.

By its attorneys,

Joseph A. Camardo, Jr.
Camardo Law Firm, PC
127 Genesee Street
Auburn, NY 13021
Tel: (315) 252-3846
Fax: (315) 252-3508
Email: joecamardo@camardo.com